439 P.2d 483

**STATE of Arizona, Appellee,**

v.

**Lonnie Maurice GREEN, Appellant.**

**No. 1727.**

Supreme Court of Arizona.

In Banc.

April 3, 1968.

Darrell F. Smith, Atty. Gen., Carl Waag, Asst. Atty. Gen., for appellee.

Barry Allen Reiss, Phoenix, for appellant.

BERNSTEIN, Justice.

Defendant, Lonnie Maurice Green, appeals from a conviction of robbery in violation of A.R.S. §§ 13–641 and 13–643, and from the imposition of a sentence of not less than five nor more than six years in the Arizona State Prison.

On January 27, 1966, at approximately 7:30 P.M., Benjamin Mollett was robbed of $20.60 by two men in the vicinity of Fillmore and 6th Avenue in the City of Phoenix. About forty-five minutes later Charles Edward Jones and Lonnie Green were arrested by the police seven blocks away from the scene of the robbery. Although Mr. Mollett was able to identify Jones as one of the men who had robbed him he could not identify Green. Jones was tried jointly with the defendant Green but is not a party to this appeal.

The police searched Green before putting him in the "paddy wagon" but nothing was found on his person. The only other person in the "paddy wagon" with Green was Burl Innes, a man who had been arrested earlier that evening for disturbing the peace. After arriving at the police station and taking the men from the "paddy wagon" the police searched inside the vehicle and found a "matchbox containing a partially burned $20 bill."

Innes testified that while he was inside the "paddy wagon" with Green he saw:

"* * * a match flare and placed in position presumably to light a cigarette. The match was held down in the cup of the hands after the motion towards the mouth between the legs. The match continued to burn."

On appeal the defendant contends that the trial court committed reversible error when it refused to allow him to examine a report made by Mr. Mollett, the robbery victim, to the police. On cross

examination Mr. Mollett testified that he did make a statement to the Phoenix police regarding the robbery on the evening of its occurrence. At that point the defendant made a motion to inspect the police report which presumably contained this statement. The issue thus raised is whether the defendant had a right to examine the report to determine whether it contained any prior inconsistent statements which might be employed to impeach Mr. Mollett's testimony.

In State v. Saenz, 88 Ariz. 154, 353 P. 2d 1026, we held that a defendant had a right to examine notes prepared by a police officer to determine whether they were inconsistent with the testimony he gave on the witness stand. Similarly, in State v. Wallace, 97 Ariz. 296, 399 P.2d 909, we held that a defendant could inspect that portion of the police report dealing with statements made to an officer whose testimony was sought to be impeached. In the Wallace case we pointed out that a defendant does not have a right to these reports for purposes of pre-trial discovery, but only after the officer testifies for the purpose of determining whether the statements contained in the report include inconsistent statements that could be used to impeach the testimony of the police officer. See also State ex rel. Corbin v. Superior Court, 99 Ariz. 382, 409 P.2d 547.

We see no logical difference between discrediting the testimony of a police officer and impeaching the testimony of the complaining witness in a robbery case. Certainly there is a more compelling reason for the defendant to desire to impeach the credibility of the robbery victim. Consequently, the refusal of the trial court to permit the defendant to examine that portion of the police report containing statements made by Mr. Mollett constituted reversible error. State v. Wallace, supra; State v. Ashton, 95 Ariz. 37, 386 P.2d 83. Although our decision requires that defendant be afforded a new trial another issue is raised which requires our attention.

■ Defendant contends that the verdict of guilty against him was based solely on circumstantial evidence and was not inconsistent with every reasonable hypothesis of innocence. In addition, he contends that the verdict was contrary to the weight of the evidence. The record supports defendant's contention that the evidence against him was entirely circumstantial. He argues that if after an examination of all the reasonable inferences that can be drawn from the evidence an inference of innocence exists then his motion for a directed verdict should have been granted. We do not agree. We have consistently held in the past that because of the dangers that lurk in a conviction based solely on circumstantial evidence an instruction must be given to the jury that "the evidence must not only be consistent with guilt but inconsistent with every reasonable hypothesis of innocence." State v. Bearden, 99 Ariz. 1, 3, 405 P.2d 885, 886; State v. Tigue, 95 Ariz. 45, 47, 386 P.2d 402. However, in the Bearden case we noted that it was the function of the jury to decide what reasonable inferences could be drawn from the evidence. State v. Bearden, 95 Ariz. at 3, 405 P.2d at 886. The defendant relies on State v. Alkhowarizmi, 101 Ariz. 514, 515, 421 P.2d 871, 872, to support his position that where "inconsistent conclusions are reasonable from the circumstances, and that conclusions consistent with innocence are as *equally* reasonable as the inference consistent with guilt" the trial court must grant a directed verdict of acquittal. (Emphasis added.) But if the defendant's analysis were correct there would be no reason to have juries decide criminal cases in which the only evidence against the defendant is circumstantial, for the trial judge could determine at the close of the evidence whether there was any reasonable hypothesis of innocence. The Alkhowarizmi case, however can be distinguished from the case at bar, for in that case the evidence was such that no reasonable men could differ but were compelled to conclude that the defendant was not guilty. Under such cir-

cumstances the court is required to direct a verdict of acquittal.

In the instant case, however, the record reveals sufficient inferences from the facts to support the jury's verdict. A "matchbox containing a partially burned $20 bill" was found in the "paddy wagon" after Green was taken from the vehicle; Burl Innes testified that he saw "a match flare" and "held down * * * between the legs" and that "the match continued to burn"; the amount taken from the robbery victim was $20.60, and sixty cents was found in defendant Jones' possession; and finally, defendant Green was arrested in the company of his co-defendant, Jones, shortly after the robbery, approximately seven blocks from where it had been perpetrated.

As we said in State v. Bearden, 99 Ariz. 3–4, 405 P.2d 886–887:

"Reversible error occurs where there is a complete absence of probative facts to support the conclusion. State v. Mahan, 92 Ariz. 271, 272, 376 P.2d 132; State v. Milton, 85 Ariz. 69, 331 P.2d 846. When we consider whether the verdict is contrary to the evidence we do not decide whether we would reach the same conclusion as the jury. Rather, we decide whether there is competent evidence to support the conclusion found or, alternatively, whether the verdict was found without evidence from passion, prejudice or other improper motive. Quong Yu v. Territory of Arizona, 12 Ariz. 183, 186, 100 P. 462. Evidence is not insubstantial simply because the testimony is conflicting or reasonable persons may draw different conclusions therefrom. Macias v. State, 39 Ariz. 303, 307, 6 P.2d 423. Substantial evidence means more than a scintilla and is such proof as a reasonable mind would employ to support the conclusion reached. Henzel v. Cameron, 228 Or. 452, 365 P.2d 498, 503. It is of a character which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed. Grange v. Finlay, 58 Wash.2d 528, 364 P.2d 234, 235. If reasonable men may fairly differ as to whether certain evidence establishes a fact in issue then such evidence must be considered as substantial. Smith v. Schumacker, 30 Cal.App.2d 251, 85 P.2d 967, 972; Davis v. Hartley, 69 N.M. 91, 364 P.2d 349, 351."

Consequently, in light of all the circumstances in this case we hold that the evidence was sufficient to support the jury's verdict.

Defendant further contends that his motion for a separate trial should have been granted once it became apparent that the evidence against his co-defendant, Jones, was much stronger than the evidence against him. We need not decide this question in light of the fact that this case must be remanded for a new trial, and since Jones did not appeal his conviction it is obvious that Green will have a separate new trial.

Reversed and remanded.

McFARLAND, C. J., and UDALL, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.